HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUTH JELINEK,

    Plaintiff,

v.

AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, DBA ANPAC Insurance Company, a foreign corporation,

    Defendant.

Case No. 2:15-cv-00779-RAJ

**ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS *IN LIMINE***

## I. INTRODUCTION

This matter is before the parties' motions *in limine*. Dkt. ## 137, 138, 139. For the reasons below, the Court **GRANTS in part**, **DENIES in part**, and **TAKES UNDER ADVISEMENT** the parties' motions.

## II. BACKGROUND

Plaintiff Ruth Jelinek is the policyholder of an automobile insurance agreement with Defendant American National Property and Casualty Co. ("ANPAC"). Her insurance policy includes $10,000 in medical payments ("MedPay") coverage and $100,000 in underinsured motorist ("UIM") coverage. Dkt. # 1-1 at 11. On October 31, 2012, Jelinek was involved in a car accident caused by another motorist. She reached a settlement with the at-fault motorist for $100,000. She also filed a claim for MedPay and UIM coverage

ORDER – 1

with ANPAC. ANPAC paid the $10,000 limit of her MedPay coverage, but declined to pay the limit of her UIM coverage. Jelinek later filed this action, alleging ANPAC committed tort violations and breach of contract by mishandling her claim for UIM coverage. Her claims for breach of the duty of good faith and fair dealing and for violations of the Washington Insurance Fair Conduct Act ("IFCA") and the Washington Consumer Protection Act ("CPA") (hereinafter, the "extracontractual claims") were dismissed on summary judgment. Dkt. # 66.

After trial on the breach of contract claim, Jelinek appealed from the Court's order granting summary judgment in favor of ANPAC on her extracontractual claims. Dkt. # 122. On October 5, 2018, the Ninth Circuit reversed the Court's grant of summary judgment on Jelinek's extracontractual claims, finding that a jury reasonably could draw inferences in favor of either party based on the evidence presented. Dkt. # 128. On December 6, 2018, the Court set the trial on Jelinek's extracontractual claims for November 4, 2019. On October 7, 2019, the parties submitted motions *in limine* which are now before the Court. Dkt. ## 137, 138, 139.

## III. LEGAL STANDARD

Parties may file motions *in limine* before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). To decide on the motions *in limine*, the Court is generally guided by Federal Rules of Civil Procedure 401 and 403. Specifically, the Court considers whether evidence "has any tendency to make a fact more or less probable than it would be without the evidence," and whether "the fact is of consequence in determining the action." Fed. R. Civ. P. 401. However, the Court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Civ. P. 403.

ORDER – 2

## IV. DISCUSSION

The findings and conclusions in this order, like all rulings *in limine*, are preliminary and can be revisited at trial based on the facts and evidence as they are actually presented. *See, e.g.*, *Luce v. United States*, 469 U.S. 38, 41 (1984) (explaining that a ruling in limine "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). Subject to these principles, the Court issues these rulings for the guidance of the parties.

    **A.**    **AMPAC's Motions in Limine**

        **i.**    **Mutually Agreed Motions in Limine**

The Court accepts the parties' resolution of the following disputed issues for trial and **GRANTS** the following motions in limine:

1. The parties agree not to refer to the "golden rule" or similar themes, whether directly or indirectly. This includes any argument that asks jurors to place themselves in the position of either party or to grant relief that they would feel entitled to if they were in the same position. (Motion in Limine No. 1.)
2. The parties agree to inform opposing counsel of their expected witnesses for each day by close of business on the previous day. (Motion in Limine No. 2.) Plaintiff to advise the parties on the preceding Friday of the witnesses testifying on November 4.
3. The parties agree not to introduce witnesses and/or evidence at trial not previously disclosed through discovery to date. (Motion in Limine No. 3.)
4. The parties agree not to introduce expert testimony or opinion evidence not previously disclosed in the four corners of the expert's report. (Motion in Limine No. 4.)
5. The parties agree not to reference any "probable" testimony in their opening

ORDER – 3

statement of any witness who is absent, unavailable, or not called to testify at trial. (Motion in Limine No. 5.)

6. The parties agree not to mention or disclose ANPAC's use of a jury consultant in connection with any aspect of trial, including the selection of the jury. (Motion in Limine No. 6.)

7. The parties agree not to mention or disclose any evidence about discovery disputes, discovery negotiations, or allegations of misconduct involving discovery between the parties. (Motion in Limine No. 9.)

8. The parties agree to preclude evidence or argument about ANPAC's post-litigation conduct, including settlement discussions. (Motion in Limine No. 21.)

### ii. Disputed Motions in Limine

**(1) Motion in limine No. 7**

ANPAC moves to preclude references to the Court's prior rulings. The Court **GRANTS** ANPAC's motion. The Court's prior rulings are irrelevant as they do not make any fact related to Jelinek's extracontractual claims more or less probable. *See* Fed. R. Evid. 401.

**(2) Motion in Limine No. 8**

ANPAC moves to exclude any reference to the parties' financial conditions. The Court **GRANTS** ANPAC's motion to the extent the parties' financial conditions do not make any fact related to Jelinek's extracontractual claims more or less probable. *See* Fed. R. Evid. 401.

**(3) Motion in Limine No. 10**

ANPAC seeks to preclude Plaintiff's claim-handling expert David Mandt from disputing ANPAC's valuation of the claim, criticizing ANPAC's post-litigation conduct, or questioning ANPAC's request for an independent medical examination ("IME") or an examination under oath ("EUO").

ORDER – 4

The Court will not rule in a vacuum without more knowledge of the expert's purported testimony. It is unclear what topics or issues Mandt intends to testify on and what foundation he has for any opinions. Therefore, ANPAC's motion is **TAKEN UNDER ADVISEMENT**. ANPAC may raise proper objections to Mandt's testimony during the course of trial, or on cross-examination regarding contrary or conflicting opinions rendered pretrial.

### (4) Motion in Limine No. 11

ANPAC moves to prohibit Plaintiff from introducing "character" evidence and/or evidence of other claims or lawsuits involving ANPAC. The Court **GRANTS** the motion. The Court agrees that that existence of other claims or lawsuits involving ANPAC are irrelevant to Plaintiff's extracontractual claims.

### (5) Motion in Limine No. 12

ANPAC moves the Court to prohibit any direct or indirect evidence suggesting Plaintiff actually suffered a brain bleed or capillary lesion as a result of the accident at issue. According to ANPAC, Plaintiff has not disclosed any expert opinions, findings, or report regarding the existence of a brain bleed or causation. ANPAC also claims that there is insufficient evidence from which a medical expert could make a diagnosis of a brain bleed or capillary lesion (or causation) with a reasonable degree of medical certainty. Therefore, ANPAC's motion is **GRANTED**.

### (6) Motion in Limine No. 13

ANPAC moves to preclude the introduction of expert testimony regarding the force, mechanics, or speed of the collision. ANPAC also moves to preclude any references to the speed of the tortfeasor. ANPAC claims that Plaintiff has not made expert disclosures regarding the force of mechanisms of the collision. ANPAC's motion is **GRANTED** to the extent Jelinek wishes to testify beyond her capacity as a lay witness or introduce expert testimony not disclosed prior to trial. However, Jelinek is permitted to testify as to her first-hand experience and observations during the collision. To the extent, Jelinek seeks to

ORDER – 5

testify regarding the speed of the tortfeasor based on her first-hand experience, ANPAC may take up her prior statements during cross-examination.

### (7) Motion in Limine No. 14

ANPAC moves to preclude argument that ANPAC had a heightened duty to Jelinek, or that ANPAC was required to treat her interests on an equal footing with their own. The Court **GRANTS** ANPAC's motion. An insurer typically owes a heightened duty to "give equal consideration to the insured's interests and its own interests." *Liberty Int'l Underwriters v. Carlson*, 2006 WL 623785, at *9 (W.D. Wash. Mar. 13, 2006) (citing *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 78 P.3d 1266, 1270 (2003)). This enhanced duty does not exist in a UIM case, in which the insurer often stands in the shoes of the tortfeasor, can assert any defense to liability that the tortfeasor had, and thus finds itself in an adversarial relationship with its own insured. *See Ellwein v. Hartford Acc. & Indem. Co.*, 15 P.3d 640, 647 (Wash. 2001), overruled in part on other grounds, *Smith v. Safeco Ins. Co.*, 78 P.3d 1274 (Wash. 2003).

### (8) Motion in Limine No. 15

ANPAC claims that Jelinek should be judicially stopped from arguing that ANPAC committed any extracontractual tort before April 21, 2015, the purported earliest date that ANPAC could have offered her the policy limits. Dkt. # 137 at 13. At oral argument before the Ninth Circuit, Jelinek's counsel conceded that "the essential time period" for which ANPAC had sufficient information on her claim was roughly April 21, 2015.

The Court disagrees with ANPAC that counsel's statement precludes Jelinek from arguing the existence of relevant conduct prior to that date. The Ninth Circuit's memorandum indicated that "a jury could reasonably find that ANPAC only superficially reviewed the records provided to it, and that its settlement offers were based on litigation avoidance without reference to Jelinek's actual injuries." Dkt. # 128 at 5-6. The Ninth Circuit references the exclusion of Jelinek's examination under oath ("EUO") from the claim file, and that fact that no one other than an ANPAC attorney reviewed the EUO

ORDER – 6

transcript. Based on the evidence, the Ninth Circuit concluded that "[a] jury could reasonably find that, by the time Jelinek filed suit, ANPAC had decided it would not value her claim at more than $25,000, *regardless of what the evidence might show*, and that the offer was based on a desire to avoid litigation rather than a good-faith appraisal of Jelink's injuries." *Id.* (emphasis added). Based on the foregoing, the Court finds that Jelinek is not judicially estopped from arguing relevant conduct prior to April 21, 2015. ANPAC's motion is **DENIED**.

### (9) Motion in Limine No. 16

ANPAC moves to preclude Plaintiff from presenting evidence or argument that ANPAC violated WAC 284-30-330(1) by "misrepresenting pertinent facts," that ANPAC violated WAC 284-30-330(13) by failing to provide a prompt and reasonable explanation for its valuation, or that ANPAC violated WAC 284-30-370 by causing unreasonable delay.

ANPAC essentially seeks partial summary judgment by way of a motion in limine. *See, e.g.*, Dkt. # 137 at 16 (stating that "none of these theories are embraced within the single dispute of fact found by the Ninth Circuit and for which the case was remanded to trial"). Given the Ninth Circuit's memorandum, which states that a jury could reasonably draw inferences in favor of either party on Jelinek's extracontractual claims, and its mandate reversing the grant of summary judgment on all of Jelinek's extracontractual claims, the Court **DENIES** this motion.

### (10) Motion in Limine No. 17

ANPAC moves to preclude any reference to appeal or remand. ANPAC's motion is **GRANTED**. These references are irrelevant to the substance of Plaintiff's extracontractual claims.

### (11) Motion in Limine No. 18

ANPAC moves to preclude arguments from counsel that were made in the prior trial. The Court will not rule in a vacuum as to purported arguments, and given the

ORDER – 7

vagueness of the request, the Court takes ANPAC's motion **UNDER ADVISEMENT**.

    **(12)**    **Motion in Limine No. 19**

ANPAC moves to prohibit Jelinek from testifying that ANPAC's litigation conduct caused her emotional distress. Emotional distress from litigation conduct does not constitute compensable damages caused by the tortfeasor and thus testimony to that effect is irrelevant and unfairly prejudicial. Fed. R. Evid. 401, 403. ANPAC's motion is **GRANTED** to the extent Jelinkek claims that her emotional distress was due to the litigation or ANPAC's litigation conduct.

    **(13)**    **Motion in Limine No. 20**

Plaintiff moves to preclude references to a "prior trial" and, alternatively, prior relevant testimony should be referred to as occurring at a "prior hearing" or "prior proceeding." The Court agrees that there is little probative value to referring to a prior trial given the potential for unfair prejudice. ANPAC's motion is **GRANTED**.

    **(14)**    **Motions in Limine Nos. 22 & 23**

ANPAC moves to exclude argument or testimony about the UIM verdict under Rules 401 and 403. Alternatively, ANPAC moves to introduce a report by Plaintiff's expert alleging $1.5 million in lost earning capacity. ANPAC contends that introducing evidence of the $368,002.70 amount awarded to Plaintiff for the UIM claim would likely result in confusion and unfair prejudice in this jury's consideration of the extracontractual claims. Fed. R. Evid. 403.

The Court finds that the probative value of exposing the jury to the UIM verdict is substantially outweighed by a danger of unfair prejudice or misleading the jury. Therefore, the Court **GRANTS** the motion.

    **B.**    **Jelinek's Motions in Limine**

        **i.**    **Mutually Agreed Motions in Limine**

The Court accepts the parties' resolution of certain disputed issues for trial and

ORDER – 8

**GRANTS** the following motions in limine:

1. The parties agree not to reference claim-file documentation not disclosed prior to the discovery cut-off. (Motion in Limine No. 1.)
2. The parties agree not to reference the amount of Jelinek's attorney's fees. (Motion in Limine No. 5.)
3. The parties agree not to refer to the "golden rule" or similar themes. (Motion in Limine No. 7.)
4. The parties agree not to reference the effect of the accident on premiums or rates. (Motion in Limine No. 11.)

### ii. Disputed Motions in Limine

**(1) Motion in Limine No. 1**

Jelinek seeks to preclude references to an alleged requirement that the policyholder compromise the amount of benefits to which she is entitled. Plaintiff's motion is **GRANTED** to the extent the parties intend to misstate Washington law, which is clear that "[t]he underinsurer is liable for the insured's uncompensated damages above the limits until the underinsurance policy coverage is exhausted or until the insured is fully compensated, whichever occurs first." *Hamilton v. Farmers Ins. Co.*, 733 P.2d 213 (Wash. 1987). The Court expects Jelinek to make the proper objection during the course of trial.

**(2) Motion in Limine No. 2**

Jelinek moves to preclude references to comparative fault, claiming that ANPAC may attempt to shift fault to her or her counsel. Dkt. # 139 at 4. However, because Jelinek only provides generalities about the evidence at this time, it is premature for the Court to issue a ruling and will wait for further context. Therefore, Jelinek's motion is **TAKEN UNDER ADVISEMENT**. The Court expects Jelinek to make the proper objection during the course of trial.

ORDER – 9

**(3) Motion in Limine No. 4**

Jelinek moves to preclude statements by the tortfeasor's insurance company, Country Financial, that the $100,000 liability limits would not be exhausted with respect to her claim. According to Jelinek, no Country Financial adjuster is scheduled to testify and the only purpose for which ANPAC would try to use Country Financial's valuation is to prove the truth of the matter asserted. Dkt. # 139 at 6. Because Plaintiff only provide generalities about the evidence at this time, it is premature for the Court to issue a ruling and will wait for further context. Therefore, Plaintiff's motion is **TAKEN UNDER ADVISEMENT**. The parties can submit proposed limiting instructions regarding the purpose of the testimony being allowed.

**(4) Motion in Limine No. 6**

Jelinek moves to exclude certain evidence of her prior medical history, which was the subject of a limiting instruction during the UIM trial. She argues that neither ANPAC nor any witnesses should reference that any of those conditions were actually substantiated or relevant to the UIM claim. However, ANPAC's purported reliance on certain portions of her medical history is relevant to the extracontractual claims, specifically whether ANPAC based its assessment on a reasoned evaluation of the facts. Therefore, Plaintiff's motion is **DENIED**. The Court expects Jelinek to raise proper objections during the course of trial or take up the issue on cross-examination.

**(5) Motion in Limine No. 8**

Jelinek moves to preclude expert opinions on the laws relevant to her claim and whether ANPAC complied with them. Jelinek also moves to preclude undisclosed opinions.

It is well established that experts may not give opinions as to legal conclusions. *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law."). The Court **GRANTS** the motion to the extent the parties intend to offer opinions as to legal conclusions. As for the relief regarding undisclosed

ORDER – 10

opinions, it was represented to the Court that this was already agreed upon by the parties. *See* ANPAC's MIL No. 4.

**(6) Motion in Limine No. 9**

Jelinek moves to prohibit any reference to an intentionality requirement in order to establish an IFCA violation. Dkt. # 139 at 10. The Court will not rule in a vacuum as to purported arguments and therefore Plaintiff's motion is **TAKEN UNDER ADVISEMENT**. The Court expects Plaintiff to make the proper objection during the course of trial.

**(7) Motion in Limine No. 10**

Plaintiff moves to exclude testimony or arguments relating to the bases for redactions in the claim file. The Court **GRANTS** Plaintiff's motion to the extent it seeks to exclude testimony or reference to discovery disputes, discovery negotiations, claims of privilege, or allegations of misconduct during the discovery process.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS in part**, **DENIES in part**, and **TAKES UNDER ADVISEMENT** the parties' motions. Dkt. ## 137, 138, 139.

DATED this 23rd day of October, 2019.

_Richard A. Jones_
The Honorable Richard A. Jones
United States District Judge

ORDER – 11